COOK ELECTRIC CO. v. PERSONS et al.
Civil Action No. 2468.

District Court, E. D. Missouri, E. D.
Jan. 17, 1945.

Bertram W. Coltman (of Thiess, Olson & Mecklenburger), of Chicago, Ill., and Delos Haynes, of St. Louis, Mo., for plaintiff.

Bruninga & Sutherland, of St. Louis, Mo., for defendants.

DUNCAN, District Judge.

The bill of complaint alleges joint infringement by the defendants of Patent No. 1,726,584 for improvement in bellows construction granted September 3, 1929, to the plaintiff as assignee of the defendant Lawrence M. Persons, inventor, and of Patent No. 1,816,610 for methods and means for forming bellows, granted July 28, 1931, to the plaintiff as assignee of the defendant Lawrence M. Persons, as inventor, and plaintiff seeks to restrain the defendants from further infringement of both patents in suit, and for an accounting.

The plaintiff is a corporation organized and existing under the laws of the State of Illinois, with its principal place of business in the City of Chicago; the defendant L. M. Persons Corporation is a corporation organized and existing under the laws of the State of Missouri, with its principal place of business at St. Louis; the defendant Lawrence M. Persons is a resident of the City of St. Louis, Missouri.

In November 1922 the defendant Lawrence M. Persons entered the employ of the Cook Electric Company as engineer in charge of its experimental and development department. Under the terms of his employment, any new devices or methods developed or patents granted to him were to become the property of the plaintiff.

Plaintiff was engaged in the manufacture of mechanical devices, among which were water pumps and other devices requiring the use of diaphragms and bellows. Much difficulty had been experienced by the plaintiff in the use of the type bellows which was then available for use in the pumps manufactured and sold by it. During his efforts to eliminate this mechanical difficulty, defendant Persons discovered what he contended to be a new and improved method of forming a bellows which he contended was greatly superior to any other bellows known. The new method lay in the form of the elements constituting the device and the method of joining such elements by means of solder which greatly lengthened the life of the device.

Application for a patent 1,726,584, the "device" patent, was filed in the name of defendant Lawrence M. Persons and sworn to by him on May 10, 1924. The first paragraph of the application stated:

"My invention relates broadly to bellows construction which has particular application to elastic piston pumps which effect the intake and discharge by the contraction and expansion of the piston. Although I shall refer throughout the present case to this particular adaptation of my invention, it is to be understood that my invention has broader application and may be used wherever bellows are needed for any purpose.

"One aim of my invention is to provide an improved form of bellows construction having a life greatly in excess of bellows heretofore known."

The application contained twelve claims, each of which referred to "a plurality of sectional parts." Over the five year period between the filing of the application and the issuance of the patent, many amendments were made to the application—claims were amended, some were withdrawn and others were added. In Patent No. 1,726,584 the language in Claims No. 1 and 3 is typical of all the claims.

"1. A bellows construction of the type described having its side wall divided into a plurality of sectional parts, each of which is fastened to the sections above and below by a circumferential edge engagement, said engagement comprising a gutter in one of the engaging sections and a cooperating flange on the other engaging section."

"3. A bellows construction of the type described having its side wall divided into a plurality of sectional parts, each of which is fastened to the sections above and below, and is provided with a solder filled gutter for the reception of a flange on one of the adjacent sections."

On May 14, 1927, Persons filed an amendment to the application, adding Claims 16, 17, 18, 19, 20, 21, 22, 23 and 24, and refers to "sectional parts" as distinguished from "a plurality of sectional parts" for the first time. On September 3, 1929, the patent was granted allowing twenty-four claims.

In June 1941 Persons and others organized the L. M. Persons Corporation of St. Louis, and shortly thereafter it began manufacturing the accused device for use in an electric switch for installation in airplanes manufactured for war purposes. But it is not contended that the contract with the Governmental agency designated a particular make of diaphragm or bellows.

The accused device, Plaintiff's Exhibit 13B, is approximately 9 inches in circumference and ¼ inch in diameter. It is constructed of a solid metal base approximately ⅟₁₆ inch in thickness, near the outer periphery of which is a V-shaped gutter or trough, the outer wall of which extends perpendicularly approximately ¼ inch above the surface of the base. The upper part of the accused device is flexible, about ⅟₄₈ inch in thickness, the outer periphery of which is turned down to form a perpendicular flange designed to fit into the V-shaped gutter or trough in the outer periphery of the rigid element. Molten solder is flowed into the V-shaped gutter or trough in the solid base and the flange of the flexible element is inserted into the solder filled groove in the rigid element, thus forming a solid joint. The solder rises on the inside and the outside of the wall of the flange, thus filling the gutter or trough. The flexible element contains several circumferential corrugations. In the center of the rigid base there is attached a nut or threaded nipple for the attachment of a hose or feed line to convey into the chamber created by joining the elements, the activating substance, causing the diaphragm to expand and collapse. A perpendicular pin is attached to the flexible element in the center thereof, which is designed to come into contact with the mechanism to be controlled by the diaphragm.

The accused device is distinguished from a device manufactured by the plaintiff under its patent and offered in evidence as Plaintiff's Exhibits 44 and 47 in that both the top and bottom elements of plaintiff's device are flexible instead of a flexible element attached to a rigid base. In Plaintiff's device both elements are the same thickness. They contain circumferential corrugations and are joined in the same manner. That is, by melting solder into the outer peripheral gutter or trough of one element and inserting therein the perpendicular flange of the upper or opposite element, thus causing the solder to rise on the inside and the outside of the flange in the same manner, and forming identically the same kind of joint or union as that in the accused device, except that the outer wall of the trough of the accused device rises higher than on the plaintiff's device.

A bellows constructed of a plurality of sectional parts differs from a bellows or diaphragm constructed of a single section or unit only in the number of such units.

In constructing a bellows with a plurality of sectional parts, an aperture of desired size is placed in the center of each element or disk, and around the periphery of this aperture is formed a V-shaped trough, just as there is on the outer periphery, and around the inner periphery of the matching element there is formed a flange corresponding to the flange on the outer periphery. This process may be continued indefinitely to attain the desired expansive capacity for the purpose to which the device is to be put.

Defendants deny infringement. In their answer defendants allege:

"* * * that after defendant Lawrence M. Persons had signed the application which matured into patents aforesaid he had no control over the prosecution of the same and that thereafter the claims of said applications were subjected to such change at the instance of plaintiff that the claims, as allowed, included more than defendant Lawrence M. Persons intended to claim and were inconsistent with the beliefs of defendant Lawrence M. Persons as to the novelty embraced in said applications.

"IX. That the patents in suit and each of them are wholly invalid and void because the alleged inventions, improvements or discoveries purported to be claimed therein are substantially different from any indicated, suggested or described in the original applications therefor."

The defendants further contend that the patents in suit, and each of them, are wholly invalid and void "* * * because the plaintiff has long known that said patents in suit purported to cover subject matter of which defendant Lawrence M. Persons was not the original or first inventor or discoverer, * * *" and for other reasons which were known at the time to the defendant Persons. The answer further stated:

"* * * the subject matter described and claimed in the patents in suit and each of them is wholly devoid of patentable invention or novelty in view of the state of the art as it existed prior to the date of the alleged inventions therein and more than two years prior to the filing of the applications for the patents in suit; that in view of such prior state of the art the subject matter of the patents in suit constitutes nothing but unpatentable and trivial variations thereof, unpatentable aggregations of features of construction long known in the

art, and the adaptation of expedients involving no more than ordinary mechanical skill and judgment."

With respect to all of these contentions, an examination of the record reveals that the defendant Persons was at all times familiar with the progress of the application, that it was signed and acknowledged by him. The affidavit signed by Persons stated:

" * * * that he verily believes himself to be the original, first and sole inventor of the improvement in BELLOWS CONSTRUCTION described and claimed in the annexed specification; that he does not know and does not believe that the same was ever known or used before his invention or discovery thereof * * * ".

Thereafter he signed numerous communications to the Commissioner of Patents making changes and amendments, withdrawing claims and adding additional claims with respect to Patent No. 1,726,584. On September 17, 1926, in a communication to the Commissioner of Patents, the defendant Persons used this language:

"The idea of forming a solder union in a manner preventing formation or retention of air bubbles was a new inventive thought wholly beyond the ken of these patents." Page 30, P's Ex. 9.

And on the same day he further stated:

"Also, invention is involved to employ in a device embodying this novel form of union, a plurality of sections nested one within the other, the sections being provided with inner and outer upstanding flanges, so that the flanges of each section may join the flanges of the adjacent sections disposed above and below. All this was a new invention though not suggested in any of the references, and though it is old to join a plurality of sections together, it is distinctly a new idea, and one involving invention, to join a plurality of sections, in nested relation, and in a manner as just described." Page 31, P's Ex. 9.

The record and the evidence do not bear out defendant Persons' contention as to his views and his ideas respecting the patentability of his discovery, as now alleged in his answer.

I have discussed these questions of fact concerning the defendant's belief and knowledge of the condition of the prior art, not for the purpose of questioning the validity of the patent, but for such weight as it might have in construing or narrowing the claims of the patent in regard to their relation to the accused device. Westinghouse Electric & Manufacturing Co. v. Formica Insulation Co., 266 U.S. 342, 45 S.Ct. 117, 69 L.Ed. 316.

The assignor is estopped to attack the utility, novelty or validity of the patented invention in an action between assignee and assignor. As to the rest of the world, the patent might be void or unpatentable. It is not necessary to pass on that question in this case because the assignor cannot be heard to question the right of assignee to exclude him (them in this case) from its use. Westinghouse Elec. Co. v. Forsica Insulation Co., 266 U.S. 342 loc. cit. 349, 45 S.Ct. 117, 69 L. Ed. 316; Freeman v. Altvater, 8 Cir., 66 F.2d 506; Sbicca-Del·Mac Inc. v. Milius Shoe Co., 8 Cir., 145 F.2d 389.

It must therefore follow that the defendants cannot attack the validity of the patents, and for the purpose of this suit it must be held valid with respect to that which is included within its claims, and in an action of this nature, between the assignor and the assignee, a liberal construction must be placed on the patent in determining what was intended to be included within its claims. Freeman et al. v. Altvater, 8 Cir., 66 F.2d 506.

At the trial the defendants contended that the single element diaphragm or bellows represented by Plaintiff's Exhibits 13-B and 44 were included within the claims. In the original application there is described a bellows comprising "a plurality of sectional parts" attached at their peripheral edges in the manner described therein, and no change was made in that respect until the filing of the application on May 14, 1927 when nine additional claims, 16 to 24 inclusive, were filed. It is in this amendment that we first find descriptive reference to the single element device and I quote:

"21. An expansible and collapsible element comprising sectional parts jointed together at their peripheries by a soldered joint, said joint comprising a gutter in one section, solder in said gutter, and the edge of the other section extending into said gutter and imbedded in the solder."

"22. An expansible and collapsible element comprising sectional parts joined together at their peripheries by a soldered joint, said joint comprising an open top gutter in one section, solder in said gutter,

and the peripheral edge of the other section extending into said gutter and imbedded in the solder."

In other words, we find in these claims the phrase "sectional parts" as distinguished from "a plurality of sections."

Some time prior to the filing of the application in which these additional claims were made, a conference was held in the office of the attorneys for the applicant, at which this very question was discussed. Stenographic notes were taken of this conference, a transcript was made and introduced at the trial of this case. In this conference it was clearly indicated that Lawrence M. Persons anticipated the inclusion in his patent of a single diaphragm. This question was asked and answered:

"Mr. Ames: In that connection is that shown here in this application?

"Mr. Persons: It is a single diaphragm like this (indicating). The distinction between a diaphragm and a bellows or a number of diaphragms is pretty hard to say."

After the discovery by Persons of the method of assembling the units and soldering them at their peripheries, the plaintiff manufactured single element expansible and collapsible diaphragms, and such devices bore the number of the patent. In view of the record, I think there can be no question that this type device was intended to be included within the patent.

We next come to the contention of the defendants that even though the single element expansible and collapsible diaphragm is included in the patent, the accused device constructed as it is, is not included within the patent and therefore, not an infringement. Again we look at the record. Claim No. 20 signed by defendant Persons and filed with the Commissioner of Patents provides:

"20. An expansible and collapsible element comprising a flexible sectional part secured to an adjacent sectional part, said flexible section having a peripheral flange secured in a gutter in said adjacent section."

The meaning seems to be clear that this claim covers the description of the accused device as to the question of a rigid base and flexible top, but if there is any doubt, we may again rely upon the patentee's own words. At the time of the filing of the application adding the last nine claims, in a note attached to the amendment, he stated:

*"Claim 20 covers a structure where one of the cooperating parts is not necessarily flexible."* (Emphasis supplied.)

Therefore, by his own language the inventor brings a device formed of a rigid base and a flexible member within the claims of his patent.

We come now to the final contention of the defendants with respect to the device patent 1,726,584 that the method of forming diaphragms by joining the elements at their peripheries by means of solder-in-gutter-flange-in-solder was old in the art and was not included within the claims of the patent.

To answer this question it must be determined whether or not the method of applying the solder in securing the joint was a part of the new and novel idea of the patentee, and whether or not the patentee intended that the method of uniting the elements in the solder as well as the shape of the elements themselves, was a part of his new and patentable idea. Defendants contend that it is not, and that in view of the prior art and the method of constructing bellows prior to the formation of this new device, it could not have been intended to be included as a claim of the patentee at the time of the filing of his application and the granting of his patent.

To support their contention, the defendants introduced in evidence numerous patents for the forming of bellows and other devices in which a diaphragm was generally described as forming a part of the device patented. They also introduced in evidence several devices which had been constructed and in which the use of a diaphragm was required. In the patents of these latter devices, a diaphragm with soldered joints was described.

However, experience had taught that bellows formed by this method of joining the parts of such devices at the peripheries had not been successful and that the joints formed in that manner were not secure and were inclined to separate or permit leaks. It was because of this difficulty that Persons engaged in his experiments that finally resulted in the discovery of the method of soldering the joints which resulted in the issuance of the patent.

At the expense of repetition, it might be well to again describe the method of joining the parts of the accused device. Into the V-shaped trough or gutter in the rigid base there is flowed molten solder and it is puddled in such a manner as to produce uniform consistency and depth. Into this solder is pressed or inserted the peripheral flange of the upper or flexible part, and the solder rises on the inner and outer walls of the flange, thus forming an hermetically sealed joint; the flange on the flexible part being perpendicular.

In the prior art there will be found numerous ways of joining the elements or parts forming bellows or diaphragms long prior to the Persons discovery, some of which may be described as "sweated," "crimped," "brased," "welded" and "soldered" joints.

Defendant Persons, in filing the application for the patent and the various statements made with respect to the patentability of his idea, contends that none of these methods were successful and that his method of soldering the parts at the peripheries in the particular manner in which his method of soldering was taught, eliminated the problems encountered with the other and older types of joints.

In determining whether or not the forming of the union at the joint by flowing the molten solder in the trough and inserting the perpendicular flange into the hot solder in such way as to permit air bubbles to escape and causing the solder to rise on the inner and outer walls of the flange in such manner as to lend strength to the joint as well as to hermetically seal it was a part of the patent in suit, let us again refer to the words of the patentor, the defendant Persons. At page 5 of Plaintiff's Exhibit 9 this language was used by the defendant Persons in his application.

"In Fig. 6 I have illustrated the method of assembling the sections 6 and 7. The upper section 7 is first inverted and solder is poured in the circumferential gutter 26, the lower section 6 is also then inverted and superimposed upon section 7 so that flange 17 will enter the solder and seat within gutter 26. Solder is then poured in gutter 22 of section 6 and the next lower section 7 is inverted so that its outer circumferential flange 24 will enter the solder and also seat in gutter 22. As soon as solder 30 is seated the various sections 6 and 7 are rigidly united."

In a communication to the Patent Office dated June 26, 1925 applicant stated (page 11, P's Ex. 9):

" * * * said gutters receiving molten solder into which said flanges are inserted during the assembly, said molten solder rising on the walls of said flanges when inserted, forming a substantial hermetic union between the disks when the solder hardens, said gutters and said flanges being arranged or formed on said disks so as to practically eliminate deflection and prevent crystallization of the metal at or near the union of said disks."

In a communication addressed to the Commissioner of Patents on December 3, 1925, the applicant stated (Page 24, P's Ex. 9):

"It will be observed that applicant has provided a bellows construction having a novel type of union between its sections. Applicant's gutter method of soldering forms a tight joint, as any bubbles of air which might otherwise form a pocket are allowed to freely escape. This forms a strong joint because the solder holds a larger area of the diaphragm compared to the references cited. * * *"

Again on September 17, 1926, in a communication to the Commissioner, the applicant stated in reference to the Deegan and Zierden patents which have been offered in evidence here (Page 29, P's Ex. 9):

"Both Deegan and Zierden talk of their edges as being turned over flanges, and in their description of the assembly of the sections, the very character of these edges are revealed as flanges and only flanges, because in neither case, are these edges first formed in trough or gutter formation to receive the cooperating flange in a puddle of solder. On the other hand, these edges are turned over into their interconnecting relation after the adjoining edges are placed together. Solder may be placed about the edges after placed together in Zierden's device, but his arrangement is obviously not one of solder filled gutters. *The apparent advantage of applicant's gutters is that air bubbles do not remain in the solder,* but liberate themselves before the solder hardens. A surface application of solder to form a hermetic seal invariably results in trapping considerable air which cannot free itself in time—that is, before the solder hardens." (Emphasis supplied.)

Applicant further stated in the same communication to the Commissioner (page 31):

"The applicant submits that invention is involved in a device in which the sections are hermetically sealed by a solder connection comprising a solder filled gutter and cooperating flange, the air bubbles liberating themselves before the solder hardens. Also, .invention is involved to employ in a device embodying this novel form of union, a plurality of sections nested one within the other, the sections being provided with inner and outer upstanding flanges, so that the flanges of each section may join the flanges of the adjacent sections disposed above and below."

Again on January 26, 1929, in a communication to the Commissioner applicant stated (page 54):

"Mount relies on holding his sections together by the rings 4 and not by solder, as in applicant's case."

And further on the same page:

"Mount does not subject his solder joint to stresses of any kind. Mount relies on the flanges 4 for strength at the union, while in applicant's case, the solder-filled gutter is the strongest part of his entire bellows."

Again on same page:

"Clearly, Mount does not teach the use of applicant's union in Deegan's device, nor does he even teach Deegan to use a solder joint. Mount does not form the edges of his sections into gutters. His rings 4 form the union and allow solder merely to form a hermetical seal."

As further evidence of the intention of the patentor to include the method of flowing the solder and of inserting the parts into the solder within the claims of his patent, he invented and was granted Patent No. 1,816,610, one of the patents in suit here, for the purpose of joining the elements or parts by means of solder, and at page 20 of Plaintiff's Exhibit 12 in a note attached to application under date of February 29, 1929, this language was used:

"He found that it was vital to apply the solder in a manner which would permit of easy flow in and about all the surfaces to be united, so as to cause any air bubbles which may form to rise through the puddled solder and escape. The invention herein resides in a method of soldering the bellows joint which eliminates any possibility of air bubbles trapping in the solder. Applicant accomplished this advance in the art by applying heat circumferentially to the gutter and rotating the heating element before the solder is applied to the heating element. This assures that no air bubbles will be trapped in the solder so as to weaken the joint at this point."

I have investigated the claims of the patents offered in evidence with respect to the description of the bellows formation and the method of joining the edges or peripheries by means of solder, and I fail to find in any of them a description of any method of flowing the solder or of any particular method of inserting the elements into the solder with the view to forming a particular type of union, nor do I find any statement in any of the patents or the claims, claiming any superiority of the soldered joint over that of any other joint because of the particular method of securing the joint by means of the solder. They are merely described as soldered joints and not a particular type of soldered joint as is described in and taught by the patent in suit.

Defendants offered in evidence Exhibits 7, 15 and 116 showing the use of a diaphragm and explaining its formation in a "Gasograph" which was a device designed for the measuring of gasoline in automobile gasoline tanks. These exhibits were manufactured in accordance with "Mapel" Patents Nos. 1,798,692; 1,510,691; 1,633,-672 and mentioned repeatedly in the evidence. A physical examination of these patents clearly indicates that the soldered joints are not comparable, nor are they formed in the same manner as the soldered joints described in the patent in suit and as used in forming the accused device. The diaphragm in Defendants' Exhibits 7 and 15 are constructed of a rigid base and a flexible top or disk containing circumferential corrugations. At or near the outer periphery of the rigid base is a trough or gutter with an inner perpendicular shoulder and flat bottom surface and a perpendicular outer wall. The outer periphery of the flexible member is turned down into a perpendicular flange, and the periphery of this flange is turned out to form an horizontal flange. When these flanges are fitted into the trough in the rigid member the wall of the perpendicular flange fits flush against the inner wall of the gutter and the horizontal flange lies flat in the bottom of the trough and is slightly narrower than the bottom of the trough. Apparently solder is flowed in on the top of

the flange, and on the outer edge of the horizontal flange and the outer edge of the perpendicular wall of the trough, and in the description of the diaphragm there is no method suggested for forming the union.

The other Exhibit, No. 116, is constructed exactly like those described above, except that the inner wall of the trough in the outer periphery of the rigid member is on a slight angle instead of being perpendicular, and is comparable as to the inside of the trough of the device described in the patent in suit and of the accused device, the flexible member is constructed in identically the same manner, i. e., with a perpendicular flange and an horizontal flange to lie in the trough of the gutter and receive the solder.

I find nothing in these patents or in these exhibits which sustain the contention of the defendants that the method of soldering the joint was not intended to be included in the claims of the Persons patent. The accused device in all respects is within the claims of Patent No. 1,726,584 and the finding is against the defendants as to that contention. The accused device, Plaintiff's Exhibit 13b infringes Claims 20, 21, 22, 23 and 24.

Plaintiff also contends that the defendants are threatening to infringe Patent No. 1,726,584 through the manufacture and sale of a device represented by Plaintiff's Exhibit No. 42B. This device is formed of a plurality of sectional parts instead of the single diaphragm construction, and clearly comes within the claims of Patent No. 1,-726,584.

The defendants make the same claim with respect to the validity of the patent respecting this device as with respect to Plaintiff's Exhibit 13b.

The defendant corporation prepared certain advertising describing a device which in all respects was comparable to bellows manufactured by the plaintiff, and showed a cut of the same which it apparently was distributing to prospective customers. However, it was contended by defendants; and not denied by the plaintiff, that this particular device was purchased from the plaintiff by the defendant corporation.

Defendant Lawrence M. Persons and the sales manager of the defendant L. M. Persons Corporation, discussed with certain die manufacturers in Chicago, the question of producing dies to form disks or parts for the manufacture of bellows. These discussions took place in 1943.

I suspect that the defendants had in mind reproducing a bellows constructed in accordance with Patent No. 1,726,584, but there was no convincing evidence that the dies which the defendants sought were to be used in the manufacture of a device which would infringe the patent in suit. Such dies were never obtained, and the matter never progressed beyond the discussion stage. The evidence is not sufficient to justify a finding that defendants intend to produce a bellows formed of a plurality of sectional parts which will infringe Patent No. 1,726,584 and the finding must be against plaintiff on that issue.

Plaintiff contends that the mechanical device used by defendant corporation to form its diaphragm, Plaintiff's Exhibit 13b, is an infringement of its Patent No. 1,816,610. Application for this patent was filed by the defendant Lawrence M. Persons as patentor on May 10, 1924, and was granted by the Commissioner of Patents on July 28, 1931, to the Cook Electric Company, assignee of the said Lawrence M. Persons.

This patent was the result of the efforts of Persons to find a means of more effectively joining the plurality of sections forming the expansible and collapsible bellows patented by him under Patent No. 1,726,584 heretofore referred to. In his application, the patentor stated:

"Certain advantages may be obtained by the use of the same or similar apparatus shown herein when practicing the method of forming collapsible and expansible vessels as disclosed herein. The soldering irons may be supported on extensible frames which permit each iron to extend forwardly over the work table when it is desired to use the same. Provision is made to immediately withdraw the iron from over the work table to a position where the operator is less apt to accidentally touch the same. Counterbalancing weights are provided to raise the irons from the surface of the work table and springs are used to automatically swing the supporting frames backwardly. Both of these irons are so positioned relative to the work table that they may be easily operated without loss of time when reaching for one or the other. I obtained an

increased production as the result of the use of this apparatus and find it has materially reduced the cost of the manufacture of the collapsible and expansible vessels.

"On the other hand, it permits the use of soldering irons which are rotatably mounted and which are provided with annular heating tips whereby the heat and solder may be applied substantially at the same time to all points about the gutter and cooperating flange, thereby producing a remarkably uniform joint. Slight rotation of these irons at the time of heating and applying solder tends to work the solder uniformly about the gutter and obtain a maximum hold or engagement over a larger area."

The patented device which is described in the patent as "Improvement in Methods of and Means for Forming Bellows" was new and apparently an improvement in the method of applying solder to joints such as described in the application. It was especially designed to form the particular type of bellows or diaphragm designed by Persons. The solder irons were attached to a rotary device so as to fit into the trough or gutter and together with heat applied in such a manner as to form solder in such gutter in an even quantity, heat having been supplied by electrically charged soldering irons.

The art of soldering was old long before the discovery by Persons of his new method and was in use for many purposes, but an entirely different method was used than that discovered by Persons. That is, through the use of an assembly of soldering irons brought in contact as in his patent, with the parts to be soldered.

The defendants make the same allegations as to the validity of this patent that they do to the validity of the first patent in suit, but that issue must be ruled against the defendants, as they are estopped to deny the validity of the patent. Westinghouse Electric, etc., Co. v. Formica Insulation Co., supra.

The method adopted by the defendants in forming the accused device, Plaintiff's Exhibit 13b, was entirely different from that described in the patent. In accordance with the findings of the court as to the infringement of Patent No. 1,726,584 the defendants could not use any method for the forming of a device which infringes that patent, but the use of a device for soldering a diaphragm or bellows which was not an infringement of that patent, would not be denied defendants.

The method used by the defendant corporation in forming the accused device is constituted of the head of a drill press which comes down and clamps the two parts of the diaphragm together and turns the parts of the diaphragm around. The whole assembly and the mounted supporting structure all turn together. Numerous gas jets arranged around the device are used to heat the element, and while the device is being turned, heated solder is fed into the groove. This is an entirely different method than that used by the plaintiff in its patented device where the soldering irons are rotated so that they fit into the groove of the bellows and rotate around such groove. There is no open flame.

As I read the claims, there is no infringement by the accused device. Construing the plaintiff's patent broadly and indulging in every presumption of its validity, it does not seem reasonable that it was intended by the patentor to include within his claims the open flame or the old method in a process which he contended was superior to that old method, and which greatly expedited the forming of the bellows and greatly reduced the expense of its manufacture. The finding is against the plaintiff as to the infringement on all claims as to its Patent No. 1,816,610.

### Conclusions of Law.

I. The first patent in suit, namely, the Persons Patent No. 1,726,584, is valid as between the parties hereto as to each and all of its claims.

II. The corporate defendant L. M. Persons Corporation by its manufacture, use and sale of its bellows and diaphragms typified in Plaintiff's Exhibit 13b has infringed Claims 20, 21, 22, 23 and 24.

III. The second patent, namely, the Persons Patent No. 1,816,610, is valid as to each and all of its claims.

IV. The device used by the defendant corporation in forming the accused device and infringing Exhibit 13b does not infringe Persons Patent No. 1,816,610.

V. The individual Lawrence M. Persons is liable jointly with the corporate defendant.

VI. Plaintiff is entitled to a decree for an injunction and accounting and to its costs as prayed for in the amended com-

plaint. Plaintiff has waived an accounting against the individual defendant Lawrence M. Persons.

Judgment is ordered in accordance with the above.